IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DANAHER CORP., | ) |
|              Petitioner, | ) |
| v. | ) Misc. No. 25-524-CFC |
| CYTEK BIOSCIENCES, INC., | ) |
|              Respondent. | ) |

**MEMORANDUM ORDER**

Presently before the Court is Danaher Corporation's ("Danaher") motion to quash Cytek Biosciences, Inc.'s ("Cytek") third-party subpoenas seeking documents and deposition testimony. (D.I. 1). For the reasons set forth below, Danaher's motion is GRANTED-IN-PART and DENIED-IN-PART and the deposition subpoena is MODIFIED.

**I.    BACKGROUND**

This miscellaneous action is related to *Beckman Coulter, Inc. v. Cytek Biosciences, Inc.*, C.A. No. 24-945-CFC-EGT, a case in which Beckman Coulter, Inc. ("Beckman") accuses Cytek of infringing various patents directed to flow cytometers. In connection with ongoing discovery in that case, Cytek served a number of third-party subpoenas on Danaher, the parent company of Beckman. (*See* D.I. 3, Exs. 9 & 10). Generally, the subpoenas seek documents and deposition testimony from Danaher on topics relating to the underlying litigation, Beckman's patents and flow cytometer products, Cytek's flow cytometer products and a possible acquisition of Cytek.

On October 22, 2025, Danaher sought to quash the subpoenas in the District of Columbia. (*See* D.I. 1). Over the ensuing months, Cytek and Danaher engaged in extensive briefing. (D.I. 1 (opening), D.I. 9, Ex. 3 (opposition), D.I. 13, Ex. 3 (reply), D.I. 16, Ex. 4 (sur-reply), D.I. 21, Ex. A (sur-sur-reply)). On December 9, 2025, this subpoena action was transferred to the District

1

of Delaware with Danaher's consent under Federal Rule of Civil Procedure 45(f). (Minute Order on Dec. 9, 2025; D.I. 22). Danaher maintains its request to quash the various subpoenas.

## II.     LEGAL STANDARD

Rule 45 governs third-party discovery. *See In re Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 8 (D.D.C. 2010).[1] Discovery sought pursuant to a Rule 45 subpoena must still comply with Federal Rule of Civil Procedure 26(b), which limits discovery to "any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1); *see also Diamond Servs. Mgmt. Co. v. Knobbe, Martens, Olson & Bear, LLP*, 339 F.R.D. 334, 338 (D.D.C. 2021) (Rule 45 incorporates the relevancy requirement of Rule 26).

Even if the requested discovery is relevant, a court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A)(iii)-(iv). The person seeking to quash a subpoena bears the burden of demonstrating that the requested discovery is unduly burdensome or privileged. *See BuzzFeed, Inc. v. U.S. Dep't of Just.*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018) (citing *In re Micron*, 264 F.R.D. at 9). Whether to quash or modify a subpoena is a matter committed to the court's discretion. *See Linder v. Nat'l Sec. Agency*, 94 F.3d 693, 695 (D.C. Cir. 1996).

## III.    DISCUSSION

Under the subpoenas at issue, Cytek has served 24 document requests and 12 deposition topics on Danaher. (D.I. 3, Ex. 9 (document subpoena) & Ex. 10 (deposition subpoena)). The discovery sought covers a wide array of topics, ranging from valuation of the Beckman patents asserted in the underlying litigation and Cytek's purported infringement thereof to the

---

[1]     Because the subpoenas seek discovery from Danaher in the District of Columbia, the Court applies the law of that forum. (*See* D.I. 3, Ex. 9 (deposition to occur at Cooley LLP's office in Washington, D.C.) & Ex. 10 (documents to be produced at same office)).

circumstances surrounding Danaher's attempts to acquire Cytek in 2018 and 2021. Danaher seeks to quash the subpoenas because (1) they seek cumulative information over what Beckman has already provided in the underlying Delaware litigation, (2) they impose an undue burden on Danaher, (3) the requested information is irrelevant and (4) the requested information "implicate[s] privileged information." (D.I. 1 at 14-24).[2] Cytek does not defend the subpoenas as originally served, instead requesting that the Court modify the subpoenas to only seek information relating to Danaher's previous interest in and attempts to acquire Cytek. (D.I. 9, Ex. 3 at 1-2 (narrowing document subpoena to Request Nos. 14-24 and deposition subpoena to Topic Nos. 7-10)). The Court first addresses the threshold issue of relevance under Rule 26.

Cytek argues that the requested information as narrowed is relevant for three reasons: non-infringement, no willfulness and damages. (D.I. 9, Ex. 3 at 11-13). Cytek first argues information surrounding Danaher's possible acquisition of Cytek provides evidence of non-infringement because Danaher would not have wanted to buy Cytek if its own subsidiary (Beckman) "already purportedly invented and owned the relevant technology." (*Id.* at 11-12). The Court disagrees. Danaher's views on a potential acquisition of Cytek and its reasons for pursuing (or ultimately not acquiring Cytek) have no bearing on whether Cytek infringes the Beckman patents. *See Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015) ("Direct infringement is a strict-liability offense."). Moreover, to the extent that any party's mental state is relevant to the issue of indirect infringement, it is Cytek's – not Danaher's or Beckman's. *See, e.g., id.* ("[L]iability for inducing infringement attaches only if the defendant knew of the patent and that 'the induced acts constitute patent infringement.'" (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766

---

[2]   Danaher also sought to quash the document subpoena because it failed to allow a reasonable time to comply. (D.I. 1 at 15-16). Given that the original deadline of October 15, 2025 has long since passed, this ground is moot.

3

(2011)).  Danaher's views regarding Cytek or the accused technology are simply irrelevant to the issue of infringement liability in a case brought by Danaher's subsidiary, Beckman.

Cytek next argues that Danaher's views on Cytek's infringement is relevant to willful infringement.  (D.I. 9, Ex. 3 at 12).  Specifically, in Cytek's view, Danaher would not have offered to acquire Cytek if Danaher believed the accused Cytek products already practiced the inventions claimed in the Beckman patents.  (*Id.*).  The problem with this theory, however, is that Danaher's beliefs are irrelevant.  The willfulness inquiry asks whether the "circumstances . . . transform simple 'intentional or knowing' infringement into egregious, sanctionable behavior."  *See SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1308 (Fed. Cir. 2019) (quoting *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 111 (2016) (Breyer, J., concurring)).  Willfulness thus focuses on the "subjective intent of the accused infringer."  *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 30 F.4th 1109, 1119 (Fed. Cir. 2017).  Danaher's views or beliefs regarding Cytek's infringement (or lack thereof) are not probative of Cytek's subjective beliefs.[3]  Indeed, whether Danaher believed Cytek infringes Beckman patents has no bearing at all on whether Cytek subjectively intended to infringe those Beckman patents.  To the extent that Danaher did, in fact, highlight differences between the Beckman and Cytek technologies, Cytek could nevertheless still be found liable for willful infringement.[4]  *See TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1287

---

[3]   The only way that Danaher's internal views could affect whether Cytek willfully infringed the Beckman patents is if Danaher conveyed those views to Cytek and it affected Cytek's subjective intent to infringe.  But Danaher seemingly did not convey any views.  (*See* D.I. 21, Ex. A at 1 ("Danaher['s] . . . uncommunicated beliefs as to Cytek's infringement has no bearing on whether Cytek knowingly or willfully infringed." (emphasis omitted))).  Even if Danaher did, Cytek and Danaher would have both been parties to such a conversation.  Cytek would already have the information and seeking it from Danaher would be burdensome and cumulative.

[4]   Much of Cytek's argument that the requested information is relevant to willfulness is based on speculation and conjecture about things that may have happened.  (*See, e.g.*, D.I. 9, Ex. 3 at 12 ("***It is reasonable to expect*** that . . . Danaher would have analyzed Cytek's Aurora

(Fed. Cir. 2020) ("[U]nder *Halo* . . . a finding of willfulness may rest on the subjective bad faith of the infringer even if it would be objectively reasonable to view the conduct at issue as non-infringing.").

Cytek last argues that Danaher's valuation for the possible acquisition of Cytek and its accused Aurora products in 2018 is relevant to damages in the Delaware litigation because, in Cytek's view, the hypothetical negotiation in that case occurred in June 2019.[5]  (D.I. 16, Ex. 4 at 2; *see also* D.I. 13, Ex. 3 at 2).  A valuation of technology similar to the technology covered by the asserted patents is at least minimally relevant to determining the result of a hypothetical negotiation.  *See Puma Biotechnology, Inc. v. AstraZeneca Pharm. LP*, 723 F. Supp. 3d 327, 361 (D. Del. 2024) ("Expert testimony on reasonable royalty rates based on allegedly comparable licenses generally is admissible so long as the expert has made a showing of baseline comparability" (cleaned up)); *see also Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014) ("[T]he district court here did not abuse its discretion in permitting [the expert] to rely on the six challenged licenses.  To begin with, four of those licenses did indeed relate to the actual patents-in-suit, while the others were drawn to related technology.").  Danaher does not dispute that Cytek's Aurora system involves technology similar to Beckman's patented technology in the Delaware litigation.  (*See* D.I. 13, Ex. 3 at 20-21; D.I. 21, Ex. A at 2-3).  Nor would it; that technology is the product accused of infringement by its subsidiary.  In the Court's view, this 2018

---

 products and compared them to the technologies disclosed and claimed in the [Beckman patents] . . . ." (emphasis added)); *id.* ("And, **presumably** Danaher would not have made such an offer to acquire Cytek if it believed the Aurora products already practiced alleged inventions that is already owned [through Beckman] . . . ." (emphasis added))).

[5]  Danaher did not undertake valuation efforts during the 2021 acquisition discussion. (D.I. 13, Ex. 3 at 20-21 (Danaher stating that there was no valuation conducted during the 2021 acquisition talks); D.I. 16, Ex. 4 at 2 (Cytek only referencing 2018 valuation as relevant to damages)).  The Court thus only evaluates the relevance of the 2018 acquisition period as applied to damages.

valuation is the only category of information with relevance to the issues in the underlying litigation.[6]

That Danaher's valuation surrounding a possible 2018 acquisition of Cytek has relevance does not end the inquiry. The Court must determine whether Danaher has shown that producing the valuation discovery would be unduly burdensome or unreasonably duplicative. *Nguyen v. Fraunhofer-Gesellschaft Zur Förderung der Angewandten Forschung E.V.*, No. MC 21-14 (CKK), 2021 WL 5800741, at *3 (D.D.C. Dec. 7, 2021). The Court finds that Danaher has made such a showing as to the requested documents – but not the requested deposition testimony.

Turning first to the document subpoena, the discovery sought is at least cumulative. Danaher asserts that there would be undue burden. (D.I. 1 at 16-22). That may be, but there is also evidence that no documents exist at all. (D.I. 13, Ex. B at 231:7-22). In any event, the discovery Cytek requests seems largely duplicative of information that could be obtained from Beckman (or even Cytek). The relevant requests of the document subpoena use identical or almost identical language as the requests for production served on Beckman in the Delaware action. (*See* D.I. 3, Ex. 11 (chart comparing document subpoena with Requests for Production served on Beckman in Delaware action)). Moreover, Beckman's Vice President of Global Marketing and Affairs, Mario Koksch (*see* D.I. 13, Ex. 3 at 16), indicated that neither Beckman nor Danaher undertook any standard diligence in 2018 because of Cytek's expedited timeline for acquisition and that, as a result, no written work product on valuations was created. (D.I. 13, Ex. B at 175:1-176:4, 222:17-223:4; *see also* D.I. 13, Ex. 3. at 21 ("Accordingly, there is no additional discovery from Danaher relating to the 2018 discussions that would provide additional detail beyond the

---

[6] For the avoidance of doubt, this refers to Cytek's Request for Production Nos. 14, 16 and 17 and Deposition Topic Nos. 7 and 8. (*See* D.I. 3, Exs. 9 & 10).

information [Beckman] already produced.")). Cytek is on a fishing expedition for documents that it has already requested from Beckman or been told do not exist. *See Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990). Non-party Danaher will not bear that burden. *See Wyoming*, 208 F.R.D. at 452-53. Therefore, the document subpoena will be quashed.

The Court reaches a different result as to the deposition subpoena regarding Danaher's valuation of Cytek in 2018. At his deposition in the Delaware action, Mr. Koksch testified that he does not know how Beckman – or Danaher – came up with the proposed acquisition price for Cytek given the "atypical" and rushed nature of the offer. (D.I. 13, Ex. B at 174:18-175:10). It appears that Mr. Koksch was not involved in determining the proposed purchase price in 2018. (*Id.* at 176:1-19). Cytek thus tried – and failed – to obtain the requested testimony from Beckman. The requested deposition testimony is not duplicative of anything that Cytek has received in the Delaware action. Instead, only Danaher was involved in valuing Cytek in 2018, and a Danaher witness can testify regarding that valuation and the reasons for it (including how the accused Cytek technology in the Delaware litigation factored into the valuation). Requiring testimony on this limited topic is not unduly burdensome, and the Court will limit the deposition to two (2) hours. To the extent that any documents related to this 2018 valuation do, in fact, exist and are located by Danaher in the course of preparing for this deposition, those documents must be produced to Cytek at least twenty-four (24) hours before the deposition.

Finally, Danaher argues that information surrounding the valuations is privileged (D.I. 1 at 24), but Danaher fails to articulate any specific privilege or basis for the privilege claim. The Court will not rule on such theories in the abstract. Danaher must provide a witness who can provide testimony on the valuation of the possible 2018 acquisition of Cytek, but Danaher is not required to provide testimony on (or documents relating to) information that is protected by a

7

substantiated claim of privilege. *See U.S. Dep't of the Treasury v. Pension Benefit Guar. Corp.*, 301 F.R.D. 20, 25 (D.D.C. 2014) (general preference for modifying subpoenas over quashing).

## IV.  CONCLUSION

For the foregoing reasons, Danaher's motion to quash (D.I. 1) is GRANTED-IN-PART and DENIED-IN-PART and the deposition subpoena (D.I. 3, Ex. 10) is MODIFIED as set forth herein.

Dated:  January 22, 2026

_____
UNITED STATES MAGISTRATE JUDGE